S. DAIL O'GWYNN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Gwynn v. Commissioner
Docket No. 37033-87.
United States Tax Court
T.C. Memo 1989-250; 1989 Tax Ct. Memo LEXIS 250; 57 T.C.M. (CCH) 499; T.C.M. (RIA) 89250; May 23, 1989. S. Dail O'Gwynn, pro se. Edsel Ford Holman, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's income taxes for 1983 and 1984 and additions to tax as follows: Additions to Tax
Self-
Employment
Sec.
Sec.
Sec.
Year
Deficiency
Tax
6651(a)(1) [1]
6653(a)(1)
6654
1983
$ 3,276.34
$ 1,298.34
$ 819.09
$ 163.82
$ 200.51
1984
1,378.05
807.05
344.51
68.90
86.64
In addition, respondent determined that petitioner is liable under section 6653(a)(2) for an addition to tax in the form of 50 percent of the interest on the portions of *253 the underpayments attributable to negligence. Petitioner has stipulated that he is liable for self-employment tax. The issues for decision are as follows: 1. Whether petitioner is entitled to business expense deductions of $ 6,605.08 for 1983 and $ 2,657.99 for 1984. 2. Whether petitioner is entitled to itemized deductions totaling $ 4,099.90 for 1983 and a charitable contribution deduction for 1984. 3. Whether petitioner is entitled to have his income tax computed by using the head-of-household rates prescribed in section 1(b). 4. Whether petitioner is liable for additions to tax under section 6651(a)(1), section 6653(a)(1) and (2), and section 6654 for 1983 and 1984. When petitioner filed his petition, he was a legal resident of Frankewing, Tennessee. He did not file income tax returns for 1983 and 1984. On Schedule C of his tax returns for 1981 and 1982, petitioner elected the cash method of accounting. 1. Business Income and Expenses
For several years before and during 1983 and 1984, petitioner carried on a business known as Custom Cast. The business consisted mainly of the casting and sale of bronze belt buckles. For 1981, Schedule C of his income *254 tax return shows gross sales of $ 104,239. For 1982, Schedule C of his income tax return shows gross sales of $ 122,042. Because petitioner failed to file income tax returns for 1983 and 1984, respondent determined petitioner's income from his business by treating as gross income the amounts of $ 13,886 for 1983 and $ 7,142 for 1984, deposited in the Commerce Union Bank of Rutherford County, Tennessee. Petitioner concedes that he had income in those amounts. Petitioner alleges, however, that he had deductible expenses of $ 6,605.08 for 1983 and $ 2,657.99 for 1984 including the following: 1983
1984
Bank Charges
$    70.97
$   157.31
Car Expenses
3,735.04
2,292.94
Office Supplies & Postage
811.85
Repairs
1,658.26
Travel and Entertainment
328.96
207.74
To substantiate his expenses, petitioner offered in evidence a number of exhibits purporting to be receipts and invoices. Some of the exhibits were illegible. Some of them purportedly covered travel expenses, automobile expenses, office supplies, and other items. Some of the exhibits bore notations of the numbers of the checks purportedly used to pay the bills. The parties stipulated *255 the ledger sheets for the bank account which respondent used to determine the amount of petitioner's income. The check numbers shown on those ledger sheets do not correspond with the check numbers written on the invoices and receipts with which petitioner sought to substantiate his business expenses. Petitioner could not explain the discrepancies in the numbers. Petitioner was repeatedly asked whether he had one or more bank accounts other than the one the Internal Revenue Service used in determining his gross income. He equivocated despite the Court's admonition that his evasive answers reflected adversely on his credibility. Petitioner's evasiveness on whether he deposited some of his business income in an account other than the one located by the Internal Revenue coupled with his failure to file returns for 1983 and 1984 after reporting gross receipts in excess of $ 100,000 from his business for each of the two preceding years raises serious questions about his credibility. We do not know whether he had another bank account in which he deposited income or whether the notations of check numbers on the invoices were false. Nonetheless, respondent has not determined that petitioner *256 had income other than the Commerce Union Bank deposits and it is obvious that petitioner could not cast belt buckles and sell them without incurring some expense. Even though we think petitioner has been less than forthright, he obviously had some deductible expenses in both years before the Court. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Based on our study of the Schedules C attached to the 1981 and 1982 returns and the invoices and receipts introduced in evidence, we find that petitioner had deductible repairs, office supplies and postage, and car expenses of $ 2,500 for 1983 and $ 750 for 1984. Petitioner is not entitled to any deductions for travel and entertainment expenses. Section 274(d) requires, as a condition to the deductibility of travel and entertainment expenses, substantiation by records showing "(A) the amount of such expense or other item, (B) the time and place of the travel, entertainment * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained * * *." Petitioner's collection of restaurant receipts, motel bills, credit card invoices, service station bills *257 and adding machine tapes, buttressed only by petitioner's vague testimony, does not meet the substantiation requirements of section 274(d) and the regulations thereunder. Sec. 1.274-5, Income Tax Regs.
2. Schedule A Deductions
In his petition, petitioner alleged that he is entitled to Schedule A deductions of $ 1,799.90 for 1983, consisting of claimed real estate tax, sales tax, home mortgage interest, credit card interest, cash contributions and a theft loss claim, and for 1984 a $ 25 charitable contribution. In the form in which it was in effect for 1983 and 1984, section 63(g) provided: (g) ELECTION TO ITEMIZE. -- (1) IN GENERAL. -- Unless an individual makes an election under this subsection for the taxable year, no itemized deduction shall be allowed for the taxable year. * * * * * * (4) TIME AND MANNER OF ELECTION. -- Any election under this subsection shall be made on the taxpayer's return, and the Secretary shall prescribe the manner of signifying such election on the return. (5) CHANGE OF TREATMENT. -- Under regulations prescribed by the Secretary, a change of treatment with respect to the zero bracket amount and itemized deductions *258 for any taxable year may be made after the filing of the return for such year. * * * The regulations prescribed by the Secretary under this provision are consistent with the statute in referring only to situations in which the taxpayer has filed a return. They do not authorize the election unless a return is filed. Sec. 1.63-1, Income Tax Regs. Because petitioner did not file returns for 1983 and 1984, he did not make the section 63(g) election. He is not, therefore, entitled to Schedule A deductions. Jones v. Commissioner,T.C. Memo. 1988-542. 3. Head of Household Issue
Section 1(b) prescribes tax rates for heads of households which are lower than the rates prescribed by section 1(c) for other unmarried individuals. Petitioner contends that he is entitled to have his tax computed by using the head-of-household rates. In the notice of deficiency, respondent computed the deficiency by using the rates applicable to married individuals filing separate returns prescribed by section 1(d). At the trial, petitioner established that he was divorced and the divorce decree became final in June of 1983. Because a taxpayer's filing *259 status depends on his marital status at the close of his taxable year, sections 2(c) and 143, respondent concedes that the section 1(d) rates do not apply but now contends that the section 1(c) rates, applicable to unmarried individuals, must be used in computing petitioner's tax liability. Insofar as it is here pertinent, section 2(b) defines "head of household" as follows: (1) IN GENERAL. -- For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year * * * and * * * (A) maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of -- (i) a son * * * * * * For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual. Petitioner contends that he was not married at the close of 1983 and 1984, that he maintained a home for his son, Jacoby, during more than half of each of those years, and that he paid over half of the costs *260 of maintaining his son and the household. The evidence supports a finding sustaining petitioner's contention. A child custody and support agreement signed by petitioner and his former wife before their divorce became final provides for joint custody of their son who was born on February 22, 1977. It provides, however, that "The child's primary domicile will be with his father." There is no suggestion that the agreement was modified. Petitioner introduced in evidence applications dated August 18, 1983, and August 9, 1984, respectively, for the admission of his son to the Middle Tennessee Christian School for the first and second grades. Both forms show the son's address as that of petitioner's. Both applications are in petitioner's handwriting and bear his signature. In answer to one of the questions on the form for the second grade, the application states that the son lives with his father, petitioner. That question was not asked on the other forms. Petitioner testified that his son has lived with him continuously since the divorce. The son's mother sees him from time to time. Petitioner was able to care for the son when the son was not in school because he conducted his *261 business from his home. Petitioner testified, and we have no reason to question his testimony, that he provided all of the son's support except during his occasional visits with his mother. Petitioner has shown that he is entitled to have his tax computed by use of the head of household rates. 4. Section 6651(a)(1) Addition to Tax
Section 6651(a)(1) provides for the imposition of an addition to tax for failure to file a timely return unless the taxpayer shows that his failure is due to reasonable cause and not due to willful neglect. Petitioner's only explanation of his failure to file returns for the two years before the Court was that he did not have accurate records, did not think he owed anything, and was afraid he would be charged with tax evasion if he stated the wrong amount of income on his returns. But he admitted that he had income in amounts equal to his bank deposits, amounts sufficient to require the filing of returns. Even though he had filed returns at least for 1981 and 1982, he consulted no qualified accountant or attorney before making his decision not to file returns for 1983 and 1984. We hold that petitioner has not carried his burden of proving *262 that he had reasonable cause for failure to file returns. He is liable for the section 6651(a)(1) addition to tax. 5. Section 6653(a)(1) and (2) Additions to Tax
Section 6653(a)(1) provides for an addition to tax in the amount of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of the rules. To the extent that the underpayment is attributable to such negligence or intentional disregard, section 6653(a)(2) imposes a further addition to tax on that portion of the underpayment in the form of 50 percent of the interest payable under section 6601. For basically the same reasons we have sustained the section 6651(a)(1) addition to tax, we sustain the section 6653(a)(1) and (2) additions to tax. "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967), affg. a Memorandum Opinion of this Court on this issue. In the circumstances of this case, a reasonable and ordinarily prudent person, knowing that his bank deposits were income, would not have failed to file income tax *263 returns without consulting counsel. Petitioner is liable for the section 6653(a)(1) and (2) additions to tax. 6. Section 6654 Addition to Tax
Section 6654(a) imposes an addition to tax for failure to pay estimated tax. Petitioner has offered no evidence to show that his case falls within any of the exceptions to this addition to tax. Respondent's determination that petitioner is liable for the addition to tax is, therefore, sustained. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩